IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

AUSTIN CARTER #400700, )
)
    Plaintiff, )
)
v. ) Case No. 1:15-cv-00090
)
CORRECTIONS CORPORATION ) CHIEF JUDGE SHARP
OF AMERICA, et al., )
)
    Defendants. )

MEMORANDUM

Plaintiff Austin Carter, an inmate of the South Central Correction Facility ("SCCF") in Clifton, Tennessee, brings this *pro se* civil rights action under 42 U.S.C. § 1983. The complaint is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, and 42 U.S.C. § 1997e.

**I.    Standard of Review**

Under the PLRA, the Court must conduct an initial review of any civil complaint filed in forma pauperis, 28 U.S.C. § 1915(e)(2), or brought by a prisoner-plaintiff against government entities or officials, 28 U.S.C. § 1915A, or challenging the conditions of confinement, 42 U.S.C. § 1997e(c). Upon conducting this review, the Court must dismiss the complaint, or any portion thereof, that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007),

governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

In reviewing the complaint to determine whether it states a plausible claim, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). A *pro se* pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). *Pro se* status, however, does not exempt a plaintiff from compliance with relevant rules of procedural and substantive law. *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) ("Neither [the Supreme] Court nor other courts . . . have been willing to abrogate basic pleading essentials in pro se suits."); *see also Brown v. Matauszak*, 415 F. App'x 608, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of pro se complaint for failure to comply with "unique pleading requirements" and stating, "a court cannot create a claim which [a plaintiff] has not spelled out in his pleading") (citation and internal quotation marks omitted).

## II. Factual Allegations

The operative complaint for initial review is the plaintiff's amended complaint (ECF No. 6), which is a sprawling, redundant 162 pages long. For the purpose of initial review, based on a cursory comparison of the documents, the Court presumes (without deciding) that the claims in the amended complaint relate back to the effective filing date of the original complaint, which is September 25, 2015, pursuant to the prison mailbox rule. (*See* ECF No. 1, at 145.)

The plaintiff alleges that he arrived at SCCF in February 2014 and was assigned to one of the "Columbia" housing units. (ECF No. 6, at 17.) He alleges that more than 80% of the inmates in that unit were affiliated with various Security Threat Groups ("STGs"), or gangs, and that STG members were effectively allowed to run roughshod over the unit, openly controlling and terrorizing their fellow inmates, including the plaintiff. The plaintiff expressly alleges that everyone from then-Warden Chapman to the correctional officers in the unit were personally aware of the dangerously violent conditions created by allowing open gang activity in the unit, and that they consciously refused to take any action to control the situation. Rather than enforcing official anti-STG policy, the defendant prison officials allowed the gang activity to "flourish, until the point that it had become a de facto policy, enforced by staff members themselves." (ECF No. 6, at 22.) Specifically, the plaintiff alleges that then-Warden Chapman, with the agreement of other defendants, told the plaintiff that "gangs are the new reality" in his unit and that "Central office" knew all about the situation and had effectively prevented prison officials from controlling it. The plaintiff alleges that orders directly from Tennessee Department of Correction Commissioner Derrick Schofield, for the

3

purpose of reducing prison expenses, caused known gang members to be released from maximum security and allowed to terrorize their fellow inmates, with correctional officers literally "getting out of the way" of gang activity on instructions from then-Warden Chapman and other supervisory officials "not to interfere with or in any way interdict STG activity." (ECF No. 6, at 30, 32.) The plaintiff alleges that gang members were allowed to engage in violence without fear of discipline, because of orders from Commissioner Schofield, again in order to reduce costs, to materially under-report incidents of violence in the prison. (ECF No. 6, at 26.) He alleges that out of control gang violence resulted in, *inter alia*, the brutal murders of at least two inmates at SCCF in September 2013 and March 2014. (ECF No. 6, at 32–33.)

The plaintiff alleges that sometime during either February or March of 2014, while he was in the Columbia unit, he personally was violently attacked at least once by gang members, and suffered a busted lip, contusions to his head and face, and injuries to his ribs, neck and lower back. (ECF No. 6, at 23.) He further alleges that he was denied medical treatment for his injuries, and that he continues to suffer severe pain as a result. (ECF No. 6, at 23, 27–28.) He alleges that the response of unit manager Buttram to the news of his assault was "welcome to S.C.C.F." and that the plaintiff could "thank" Commissioner Schofield and Corrections Corporation of America, "because they were 'responsible for this mess.'" (ECF No. 6, at 27.)

The plaintiff alleges that in March 2014 he was moved into a Discovery unit at SCCF, where official anti-STG policy is strictly enforced in order to preserve federal funds for a residential drug abuse treatment program ("RDAP") provided in that unit. (ECF No. 6, at 36.) During his entire year in the RDAP program, the plaintiff did not

4

observe a single instance of STG activity in the Discovery unit. (*Id.*)  Plaintiff alleges that the defendants' demonstrated ability to control STG activity effectively in the Discovery unit establishes the willfulness of their failure to do so in the Columbia units. (ECF No.. 6, at 36–37.)

The plaintiff alleges that he was returned to a Columbia unit at SCCF on or around August 8, 2015. (ECF No. 6, at 37.)  The plaintiff alleges that when he complained to current Warden Lindamood that STG activity is still out of control and poses a "grave threat" to his safety in the Columbia unit, she responded that the Commissioner and "central office" are to blame and that there is nothing she can do about it. (ECF No. 6, at 38.)  As further support for the Commissioner's personal involvement in the unwritten policy causing the unsafe situation, the plaintiff cites statements by the former warden of another Tennessee prison that the decisions to lower the security classifications of dangerous inmates and under-report assaults were made by Commissioner Schofield and that "the driving force is money." (ECF No. 6, at 104.)  The plaintiff alleges that other defendant SCCF officials responded similarly to his complaints, with SCCF assistant chief of security candidly acknowledging that, in order to save money on instruction from "Nashville," SCCF officials are intentionally selective about where they enforce official anti-STG policy: "we control the assholes where we need to, and let them run wild, where nobody gives a fuck." (ECF No. 6, at 39–40.)  At some point thereafter, the plaintiff alleges that he was again violently attacked by a gang for using "their" shower, and suffered a swollen lip, black eye, knots on his head and contusions and bruises on his body. (ECF No. 6, at 37.)

In addition to the alleged unsafe conditions because of STG activity, the plaintiff alleges that black mold that is allowed to persist in the Columbia units, despite the personal knowledge of prison officials, is causing him to suffer from breathing problems, headaches, dizziness, vomiting, chest pains and rashes, for which he is not being provided medical treatment despite repeated sick call requests. (ECF No. 6, at 41–43.)

The plaintiff also alleges that a water leak from pipes in his cell was first reported on September 11, 2014. (ECF No. 6, at 126.) He alleges that despite daily reports of the leak and pooling water in his floor, including reports to then-Warden Chapman and other supervisory personnel, the defendants failed to fix the leak and denied his request to move to another cell until it was fixed. (ECF No. 6, at 127.) The plaintiff alleges that on September 30, 2014, he slipped in the pool of water in his cell and fell, injuring his head, neck and lower back and aggravating the injuries he had suffered as the result of assaults. (ECF No. 6, at 128.) The plaintiff alleges that after a delay of twenty minutes, he was taken to the E.R. where he was x-rayed and given ibuprofen for pain then returned to his pod. (*Id.*) He alleges that SCCF has failed to provide needed medical treatment since that time, including delaying doctor-prescribed physical therapy for two months, and then discontinuing that therapy "due to budget constraints and staff reductions, ordered by the medical contractor." (ECF No. 6, at 128–32.)

Finally, the plaintiff alleges that he has suffered additional falls and serious injuries from being forced to walk on wet slippery steps and concrete with his hands cuffed behind his back, as required by policy. (ECF No. 6, at 143–46.)

The plaintiff requests injunctive relief including his immediate transfer to the Deberry Special Needs Facility for medical treatment and his own safety, and an order

6

requiring enforcement of anti-STG policies and procedures. In addition, the plaintiff seeks compensatory and punitive damages totaling millions of dollars. (ECF No. 6, at 158–161.)

III.     Analysis

The plaintiff brings suit under 42 U.S.C. § 1983 to vindicate alleged violations of his federal constitutional rights. Section 1983 confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that "the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F. 3d 584, 590 (6th Cir. 2003) (citations omitted); 42 U.S.C. § 1983.

It is well established that prison officials have a duty under the Eighth Amendment to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 411 U.S. 825, 832, 833 (1994). However, "[a] prison official's duty ... is to ensure 'reasonable safety,'" not absolute safety. *Id.* at 844 (citing *Helling v. McKinney*, 509 U.S. 25, 33 (1993)). A prison official may only be held liable under § 1983 for acting with "deliberate indifference" to inmate health or safety, which requires proof that the official knew that the inmate faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. *Id.* at 834. "Deliberate indifference" is a higher standard than negligence and requires that the official know of and disregard an excessive risk to inmate health or safety; "the official

7

must both be aware of facts from which the inference could be drawn that a substantial risk of serious harms exists, and he must also draw the inference." *Id.* at 837.

Likewise, deliberate indifference to a prisoner's serious medical needs "constitutes the unnecessary and wanton infliction of pain" and violates the Eighth Amendment. *Ruiz v. Martin*, 72 F. App'x 271, 275 (6th Cir. 2003) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A "serious medical need" sufficient to satisfy the objective component of this test is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Villegas v. Metro. Gov't of Nashville*, 709 F3d 563, 570 (6th Cir. 2013).

The subjective component of a deliberate indifference claim requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To establish the subjective component of this alleged violation, a prisoner must plead facts showing that "prison authorities have denied reasonable requests for medical treatment in the face of an obvious need for such attention where the inmate is thereby exposed to undue suffering or the threat of tangible residual injury." *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976). A defendant's state of

8

mind is sufficiently culpable to satisfy the subjective component of an Eighth Amendment claim when it amounts to a reckless disregard of a substantial risk of serious harm; behavior that is merely negligent will not suffice. *Farmer*, 511 U.S. at 835-36. Consequently, allegations of medical malpractice or negligent diagnosis and treatment do not state an Eighth Amendment claim for cruel and unusual punishment. *See Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Thus, when a prisoner has received some medical attention but disputes the adequacy of that treatment, the federal courts are generally reluctant to second-guess the medical judgments of prison officials by constitutionalizing claims that sound in state tort law. *Westlake*, 537 F.2d at 860 n.5.

In light of these standards, the Court finds that the plaintiff's allegations that defendants failed to repair a water leak in his cell that caused him to slip and fall fail to state a claim for violation of his civil rights and must be dismissed. A wet floor is not a sufficiently grave threat to constitute a substantial risk of serious harm as required to violate the Eighth Amendment. *Bell v. Ward*, 88 F. App'x 125, 127 (7th Cir. 2004) (finding no substantial risk of serious injury where inmate who fell and required 4 stitches alleged that prison officials knew of and deliberately refused to remedy wet floor). Federal courts have routinely found that slip and fall accidents on wet prison floors do not give rise to federal causes of action. *See, e.g., Reynolds v. Powell*, 370 F.3d 1028,1031 (10th Cir. 2004) (slippery condition arising from standing water in prison shower was not a condition posing a substantial risk of serious harm as required under the Eighth Amendment, even though inmate was on crutches and had warned prison employees that he was at heightened risk of falling); *Snipes v. DeTella*, 95 F.3d 586,

592 (7th Cir. 1996) ("an inch or two" of accumulated water in the shower was not "an excessive risk to inmate health or safety"); *Marsh v. Jones*, 53 F.3d 707, 711–12 (5th Cir. 1995) (inmate's claim for monetary damages resulting from defendants' failure to warn that a leaking or sweating air conditioning unit made the floor wet was "a garden-variety negligence claim that was not actionable under § 1983"); *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993) ("slippery prison floors ... do not state even an arguable claim for cruel and unusual punishment."). *See also Bacon v. Carroll*, 232 F. App'x 158, 160, 2007 WL 1244353 (3rd Cir. Apr. 30, 2007) (prisoner's assertion that prison officials failed to warn him of wet floor stated claim of mere negligence and not constitutional violation); *Bell v. Ward*, 88 F. App'x 125, 127, 2004 WL 260284 (7th Cir. Feb. 6, 2004) (accumulation of water on the floor due to prison officials' oversight shows, at most, that jail officials were negligent); *Beasley v. Anderson*, 67 Fed. Appx. 242, 2003 WL 21108537 (5th Cir. Apr. 22, 2003) (prisoner's claim that he slipped and fell on slippery shower floor sounded in negligence and was insufficient to allege a constitutional violation); *Lefall v. Johnson*, 48 Fed. Appx. 104, 2002 WL 31017045 (5th Cir. Aug. 20, 2002) (prisoner's claim that he suffered a back injury after slipping and falling on a wet floor caused by persistent plumbing leaks of which defendants were aware was, at most, a claim of negligence which is not actionable under § 1983); *Davis v. Corrections Corp. of Am.*, 2008 WL 539057 (N.D. Fla. Feb. 22, 2008) (plaintiff's allegations that he slipped and fell due to water on the floor from a leaking toilet resulting in injury to his leg failed to state an Eighth Amendment violation).

However, with regard to the alleged failure to provide medical care after his fall, and the rest of his allegations, construing the complaint liberally in the plaintiff's favor

and accepting as true all the facts alleged, the Court finds that the plaintiff has stated a claim against the defendants under each of the applicable standards. In reaching this conclusion, the Court notes that many of the plaintiff's factual allegations would be barred by the one-year statute of limitations if they were considered as independent claims. *See* Tenn. Code Ann. § 28-3-104(a); *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005) (statute of limitations for § 1983 actions arising in Tennessee is one year). Nevertheless, the Court may consider those facts as support for the elements of plaintiff's timely claims, such as the defendants' actual knowledge of a substantial risk of harm and the involvement of a policy or custom as necessary to state a claim against certain defendants. *See Thomas v. Coble*, 55 F. App'x 748, 748–49 (6th Cir. 2003) (for corporation performing traditional state functions to be liable, an inmate must prove that his injury was caused by actions taken pursuant to some policy or custom). It is not readily apparent from the face of the complaint which, if any, of the defendants are only connected with the dismissed claim or the time-barred facts such that they should be dismissed from the action at this stage.

## IV.  CONCLUSION

For the reasons set forth above, the plaintiff states a claim against the defendants for deliberate indifference to his safety and to his serious medical needs, for which process shall issue. An appropriate Order is filed herewith.

*Kevin H. Sharp*
_____
Kevin H. Sharp, Chief Judge
United States District Court