# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## COLUMBIA DIVISION

| | |
|---|---|
| AUSTIN CARTER #400700, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:15-cv-00090 |
| ) | Judge Sharp / Knowles |
| CORRECTIONS CORPORATION OF ) | |
| AMERICA, et al., ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court upon a Partial Motion to Dismiss filed by Defendants Corrections Corporation of America ("CCA"), Cherry Lindamood, Danny Dodd, Christopher McClain, Robert Cobble, Bill Morgan, Katherine Buttram, and Dewell Jamerson, Jr. ("Defendants"). Docket No. 62. Defendants have contemporaneously filed a supporting Memorandum of Law, arguing that: (1) Bill Morgan should be dismissed as a Defendant; (2) Dewell Jamerson, Jr. should be dismissed as a Defendant; (3) the official capacity claims against the CCA employees should be dismissed; (4) the claims that are barred by the applicable one year statute of limitations should be dismissed; (5) CCA cannot be held liable on the basis of respondeat superior; and (6) Plaintiff has failed to allege sufficient facts to support his state law claims of Intentional Infliction of Emotional Distress, Assault and Battery, Official Oppression, and Medical Malpractice, such that those claims should be dismissed. Docket No. 63.

Plaintiff has not responded to the instant Motion.

This is a pro se, in forma pauperis action filed pursuant to 42 U.S.C. §1983. *See* Docket

Nos. 1, 6. Plaintiff filed his verified original 145 page Complaint on October 1, 2015, and his verified 162 page Amended Complaint on October 13, 2015, each alleging a myriad of state law claims and Eighth Amendment violations. Docket Nos. 1, 6. In the Memorandum Opinion issued upon initial review, Judge Sharp summarized the factual allegations of Plaintiff's verified Amended Complaint, as well as his prayer for relief, as follows:

> The plaintiff alleges that he arrived at SCCF in February 2014 and was assigned to one of the "Columbia" housing units (ECF No. 6, at 17). He alleges that more than 80% of the inmates in that unit were affiliated with various Security Threat Groups ("STGs"), or gangs, and that STG members were effectively allowed to run roughshod over the unit, openly controlling and terrorizing their fellow inmates, including the plaintiff. The plaintiff expressly alleges that everyone from then-Warden Chapman to the correctional officers in the unit were personally aware of the dangerously violent conditions created by allowing open gang activity in the unit, and that they consciously refused to take any action to control the situation. Rather than enforcing official anti-STG policy, the defendant prison officials allowed the gang activity to "flourish, until the point that it had become a de facto policy, enforced by staff members themselves." (ECF No. 6, at 22.) Specifically, the plaintiff alleges that then-Warden Chapman, with the agreement of other defendants, told the plaintiff that "gangs are the new reality" in his unit and that "Central office" knew all about the situation and had effectively prevented prison officials from controlling it. The plaintiff alleges that orders directly from Tennessee Department of Correction Commissioner Derrick Schofield, for the purpose of reducing prison expenses, caused known gang members to be released from maximum security and allowed to terrorize their fellow inmates, with correctional officers literally "getting out of the way" of gang activity on instructions from then-Warden Chapman and other supervisory officials "not to interfere with or in any way interdict STG activity." (ECF No. 6, at 30, 32). The plaintiff alleges that gang members were allowed to engage in violence without fear of discipline, because of orders from Commissioner Schofield, again in order to reduce costs, to materially under-report incidents of violence in the prison. (ECF No. 6, at 26). He alleges that out of control gang violence resulted in, *inter alia*, the brutal murders of

at least two inmates at SCCF in September 2013 and March 2014. (ECF No. 6, at 32-33.)

The plaintiff alleges that sometime during either February or March of 2014, while he was in the Columbia unit, he personally was violently attacked at least once by gang members, and suffered a busted lip, contusions to his head and face, and injuries to his ribs, neck and lower back. (ECF No. 6, at 23.) He further alleges that he was denied medical treatment for his injuries, and that he continues to suffer severe pain as a result. (ECF No. 6, at 23, 27-28.) He alleges that the response of unit manager Buttram to the news of his assault was "welcome to S.C.C.F." and that the plaintiff could "thank" Commissioner Schofield and Corrections Corporation of America, "because they were 'responsible for this mess.'" (ECF No. 6, at 27.)

The plaintiff alleges that in March 2014 he was moved into a Discovery unit at SCCF, where official anti-STG policy is strictly enforced in order to preserve federal funds for a residential drug abuse treatment program ("RDAP") provided in that unit. (ECF No. 6, at 36.) During his entire year in the RDAP program, the plaintiff did not observe a single instance of STG activity in the Discovery unit. (*Id.*) Plaintiff alleges that the defendants' demonstrated ability to control STG activity effectively in the Discovery unit established the willfulness of their failure to do so in the Columbia units. (ECF No. 6, at 36-37.)

The plaintiff alleges that he was returned to a Columbia unit at SCCF on or around August 8, 2015. (ECF No. 6, at 37.) The plaintiff alleges that when he complained to current Warden Lindamood that STG activity is still out of control and poses a "grave threat" to his safety in the Columbia unit, she responded that the Commissioner and "central office" are to blame and that there is nothing she can do about it. (ECF No. 6, at 38.) As further support for the Commissioner's personal involvement in the unwritten policy causing the unsafe situation, the plaintiff cites statements by the former warden of another Tennessee prison that the decisions to lower the security classifications of dangerous inmates and under-report assaults were made by Commissioner Schofield and that "the driving force is money." (ECF No. 6, at 104.) The plaintiff alleges that other defendant SCCF officials responded similarly to his complaints, with SCCF assistant chief of security candidly acknowledging that, in order to save money on

instruction from "Nashville," SCCF officials are intentionally selective about where they enforce official anti-STG policy: "we control the assholes where we need to, and let them run wild, where nobody gives a fuck." (ECF No. 6, at 39-40.) At some point thereafter, the plaintiff alleges that he was again violently attacked by a gang for using "their" shower, and suffered a swollen lip, black eye, knots on his head and contusions and bruises on his body. (ECF No. 6, at 37.)

In addition to the alleged unsafe conditions because of STG activity, the plaintiff alleges that black mold that is [*sic*] allowed to persist in the Columbia units, despite the personal knowledge of prison officials, is causing him to suffer from breathing problems, headaches, dizziness, vomiting, chest pains and rashes, for which he is not being provided medical treatment despite repeated sick call requests. (ECF No. 6, at 41-43.)

The plaintiff also alleges that a water leak from pipes in his cell was first reported on September 11, 2014. (ECF No. 6, at 126.) He alleges that despite daily reports of the leak and pooling water in his floor, including reports to then-Warden Chapman and other supervisory personnel, the defendants failed to fix the leak and denied his request to move to another cell until it was fixed. (ECF No. 6, at 127.) The plaintiff alleges that on September 30, 2014, he slipped in the pool of water in his cell and fell, injuring his head, neck and lower back and aggravating the injuries he had suffered as the result of assaults. (ECF No. 6, at 128.) The plaintiff alleges that after a delay of twenty minutes, he was taken to the E.R. where he was x-rayed and given ibuprofen for pain then returned to his pod. (*Id*.) He alleges that SCCF has failed to provide needed medical treatment since that time, including delaying doctor-prescribed physical therapy for two months, and then discontinuing that therapy "due to budge constraints and staff reductions, ordered by the medical contractor." (ECF No. 6, at 128-32.)

Finally, the plaintiff alleges that he has suffered additional falls and serious injuries from being forced to walk on wet slippery steps and concrete with his hands cuffed behind his back, as required by policy. (ECF No. 6, at 143-46.)

The plaintiff requests injunctive relief including his immediate transfer to the Deberry Special Needs Facility for medical

4

> treatment and his own safety, and an order requiring enforcement
> of anti-STG policies and procedures. In addition, the plaintiff
> seeks compensatory and punitive damages totaling millions of
> dollars. (ECF No. 6, at 158-161.)

Docket No. 17, p. 3-7.

For the reasons set forth below, the undersigned recommends that Defendants' Partial Motion to Dismiss (Docket No. 62) be GRANTED.

## II. Law and Analysis

### A. Standard of Review: Motion to Dismiss

Fed. R. Civ. P. 12(b)(6) provides that a claim may be dismissed for failure to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory. *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Id.* A complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level"; they must "state a claim to relief that is plausible on its face." *Id.* At 1965, 1974. *See also, Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

Moreover, the United States Supreme Court has recently addressed the appropriate standard that must be applied in considering a Motion to Dismiss for failure to state a claim. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 137 L. Ed. 2d 868 (2009). The *Iqbal* Court stated in part as

5

follows:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice . . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior error, but it does not unlock the doors of discovery for plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss . . . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

129 S.Ct. at 1949-1950, 173 L. Ed. 2d at 884 (citations omitted).

## B. 42 U.S.C. § 1983

### 1. Generally

Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S.

42, 48, 108 S. Ct. 2250, 2254-55 (1988), *citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255, *quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

## 2. Individual Capacity Claims

42 U.S.C. § 1983 does not permit the imposition of liability based upon *respondeat superior*. *Polk County v. Dodson*, 454 U.S. 312, 325, 102 S. Ct. 445, 454, 70 L. Ed. 2d 509 (1981). *See also, Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978); *Street v. Corrections Corp. of America*, 102 F.3d 810, 818 (6th Cir. 1996).

In order for a defendant to be held liable in his individual capacity, a plaintiff must demonstrate that that defendant personally condoned, encouraged, or participated in the conduct that allegedly violated his rights. *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (citations omitted). *See also, Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984) (*citing Hays v. Jefferson County,* 668 F. 2d 869, 872-874 (6th Cir. 1982) (The supervisor must have "at least implicitly authorized, approved or knowingly acquiesced in" the misconduct.) Conclusory allegations are not enough. *See Street,* 886 F.2d at 1479. *See also, Anderson,* 477 U.S. at 257; *Nix v. O'Malley,* 160 F.3d 343, 347 (6th Cir. 1998); *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990); *McDonald v. Union Camp Corp.,*

898 F.2d 1155, 1162 (6th Cir. 1990). Plaintiff must establish a "causal connection between the misconduct complained of and the official sued." *Dunn v. State of Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982).

### 3. Official Capacity Claims

In complaints alleging federal civil rights violations under § 1983, "[a]n official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents." *Claybrook v. Birchwell*, 199 F.3d 350, 355 n.4 (6th Cir. 2000) (*citing Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985)). *See also, Frost v. Hawkins County Bd. of Educ.*, 851 F.2d 822, 827 (6th Cir. 1988). As such, when a public employee is sued in his or her official capacity, the claims are essentially made against the public entity. *Id*.

### 4. Eighth Amendment

The Eighth Amendment provides that:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The United States Supreme Court has held that the constitutional prohibition of "cruel and unusual punishments" forbids punishments that are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-03, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976) (citations omitted).

In order to establish an Eighth Amendment claim, an inmate must satisfy a two-prong

test: (1) the deprivation alleged must be objectively serious; and (2) the official responsible for the deprivation must have exhibited deliberate indifference to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994).

## C.  The Case at Bar

As discussed above, Defendants argue that: (1) Bill Morgan should be dismissed as a Defendant; (2) Dewell Jamerson, Jr. should be dismissed as a Defendant; (3) the official capacity claims against the CCA employees should be dismissed; (4) the claims that are barred by the applicable one year statute of limitations should be dismissed; (5) CCA cannot be held liable on the basis of respondeat superior; and (6) Plaintiff has failed to allege sufficient facts to support his state law claims of Intentional Infliction of Emotional Distress, Assault and Battery, Official Oppression, and Medical Malpractice, such that those claims should be dismissed.  Docket No. 63.  The undersigned will address contention each in turn.

### 1.  Bill Morgan

As noted, in order to state a cognizable § 1983 claim against Defendant Morgan in his individual capacity, Plaintiff must show that Defendant Morgan had some direct, personal involvement in the alleged constitutional deprivation. *See, e.g., Knott v. Sullivan*, 481 F.3d 561, 574 (6th Cir. 2005).  Because the only allegations Plaintiff makes against Defendant Morgan are that he was employed in the SCCF maintenance department and failed to properly repair his leaky pipe, and because Judge Sharp has dismissed Plaintiff's claims that he slipped and fell on the water from the leaky pipe, Plaintiff has failed to do so.  Accordingly, Plaintiff's claims against Defendant Morgan should be dismissed and he should be terminated as a Defendant in this action.

**2. Dewell Jamerson, Jr.**

As discussed above, in order for Plaintiff to hold Defendant Jamerson, Jr. liable in his individual capacity, Plaintiff must demonstrate that Defendant Jamerson, Jr. personally condoned, encouraged, or participated in the conduct that allegedly violated his rights; conclusory allegations are not enough. *Birrell*, 867 F.2d at 959; *Bellamy,* 729 F.2d at 421; *Anderson,* 477 U.S. at 257; *Nix,* 160 F.3d at 347; *Lujan,* 497 U.S. at 888; *McDonald,* 898 F.2d at 1162. When a complaint contains only conclusory allegations without any specific factual assertions upon which to base its allegations, the Complaint fails to state a claim upon which relief can be granted. *Okolo v. Metro. Gov't*, 892 F. Supp. 2d 931, 943 (M.D. Tenn. 2012).

Plaintiff, in his Amended Complaint, fails to assert any factual allegations against Defendant Jamerson, Jr. *See* Docket No. 6. Absent such allegations, Plaintiff cannot sustain his individual capacity claims against him, and Defendant Jamerson, Jr. should be terminated as a Defendant in this action.

**3. Official Capacity Claims Against CCA Employees**

With regard to Plaintiff's official capacity claims against Defendants who are CCA employees, as noted, "[a]n official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents." *Claybrook*, 199 F.3d at 355 n.4; *Matthews v. Jones,* 35 F.3d 1046, 1049 (6th Cir. 1994); *Frost*, 851 F.2d at 827. As such, when a public employee is sued in his or her official capacity, the claims are essentially made against the public entity. *Id*.

Where an entity is named as a defendant, an official capacity claim against its individual employees is redundant, and those claims should be dismissed. *Foster v. Michigan*, 573 Fed.

Appx. 377, 390 (6th Cir. 2014); *Faith Baptist Church v. Waterford Twp.*, 522 F. App'x 322, 327 (6th Cir. 2013). Because CCA is a named Defendant in this action, Plaintiff's official capacity claims against the CCA employee Defendants should be dismissed.

### 4. Statute of Limitations

As Judge Sharp noted in his Memorandum Opinion filed November 12, 2015, the statute of limitations for § 1983 actions arising in Tennessee is one year. Docket No. 17, p. 11 (*citing* Tenn. Code Ann. § 28-3-104(a); *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005). Given the prison mailbox rule, for statute of limitations purposes in the instant Motion, Plaintiff filed his original Complaint in this action on September 25, 2015. Accordingly, any independent claims which Plaintiff avers arose prior to September 25, 2014 would be time-barred, and should be dismissed.[1]

### 5. CCA - Respondeat Superior

As an initial matter, CCA is a private corporation that contracts with the State to operate the penal facility. A private entity that contracts with the State to perform a traditional state function, such as operating a penal facility, acts under color of state law and may be sued under § 1983. *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993); *Street v. Corrections Corp. of America*, 102 F.3d 810, 814 (6th Cir. 1996). Thus, CCA is amenable to suit under § 1983.

The law is well-settled that respondeat superior does not provide a basis for liability under § 1983. *See Bd. Of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. Dept. of Soc.*

---

[1] The undersigned can, however, consider the entirety of Plaintiff's allegations as support for the elements of Plaintiff's timely claims, including his claims of prior knowledge and/or policy, practice, or custom violations that have been raised in the pending cross Motions for Summary Judgment.

*Serv.*, 436 U.S. 658, 690-91 (1978); *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005). In order for CCA to be held liable, therefore, Plaintiff must plead allegations, *inter alia*, that an "official policy or custom was adopted by the official makers of policy with 'deliberate indifference' towards the constitutional rights of persons affected by the policy or custom." *City of Canton v. Harris*, 489 U.S. 378, 387-88, 109 S. Ct. 1197, 1204, 103 L. Ed. 2d 41 (1989). *See also, Monell*, 436 U.S. at 690-91 (In order to find a governmental entity liable, Plaintiff must establish that (1) he / she suffered a deprivation of a constitutionally protected interest, and (2) the deprivation was caused by an official policy, custom, or usage of the local governmental entity.). In other words, a plaintiff must show that some official policy, practice, or custom was the moving force behind the alleged constitutional deprivation. *See Monell*, 436 U.S. at 691; *Miller*, 408 F.3d at 813.

Additionally, CCA cannot be held liable for the actions or inactions of its supervisory officials simply as their employer unless a plaintiff can show that the supervisor either encouraged the specific incident of misconduct or had some direct, personal involvement in the alleged constitutional deprivation. *See, e.g., Knott*, 481 F.3d at 574; *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988). At a minimum, a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

Plaintiff's rambling 162 page Amended Complaint avers claims against Defendant CCA and its supervisory employees under a wide variety of theories. For purposes of the instant Motion, Plaintiff's general claims against Defendant CCA that are neither tied to an official CCA policy, practice, or custom, nor based upon the action or inaction of its employees, should be

dismissed.

### 6. State Law Claims

#### a. Intentional Infliction of Emotional Distress

Plaintiff, in his verified Amended Complaint, asserts a state law claim of intentional infliction of emotional distress ("IIED"). Docket No. 6. In order to establish an IIED claim, a plaintiff must prove that the complained-of conduct: (1) is intentional or reckless; (2) is so outrageous that it is not tolerated by a civilized society; and (3) results in serious mental injury. *See Doe 1 ex rel. Doe v. Roman Catholic Diocese*, 154 S.W.3d 22, 23 (Tenn. 2005).

Plaintiff avers that Defendants inflicted IIED upon him by: (1) "intentionally and knowingly refus[ing] to enforce the policy of STG activity in Housing units Columbia, Gemini and Apollo, while strictly enforcing them in Housing units Discovery and enterprise, and the Annex, while plaintiff was as signed [*sic*] to Columbia, resulted directly in his injuries and suffering"; (2) "intentionally and knowingly enforcing a policy that required Plaintiff to walk in the rain, on slippery concrete with his hands behind his back, [which] resulted directly in his injuries and suffering"; (3) "intentionally and knowingly enforcing a policy that required Plaintiff and other inmates to suffer "hardship, pain and misery" while incarcerated"; (4)"intentionally and knowingly enforcing a policy . . . that required Plaintiff to walk in a line with his hands outside of his pockets with no gloves, in freezing temperatures; [to] wait in line consistently outside in the rain for no reason, other then to make the inmates angry and to feel miserable; [and to] forcing Plaintiff to be awakened multiple times throughout the evening, purposefully subjecting him to willful sleep deprivation"; (5) "knowingly refusing to remove Plaintiff from cells wherein dangerous living conditions existed to wit: slippery wet floors and black mold" and forcing him to

live in those conditions; and (6) "failing to render proper aid and medical treatment." Docket No. 6, p. 153-57.

Taking Plaintiff's allegations as true, Plaintiff has failed to demonstrate either that these actions are "so outrageous that [they are] not tolerated by a civilized society" or that they "resulted in serious mental injury." Accordingly, Plaintiff cannot sustain his IIED claim and it should be dismissed.

### b. Assault and Battery

Plaintiff, in his verified Amended Complaint, asserts a state law claim of assault and battery. Docket No. 6. In Tennessee, the tort of assault is "any act tending to do corporal injury to another, accompanied with such circumstances as denote at the time an intention, coupled with the present ability, of using actual violence against the person" (*Thompson v. Williamson Co.*, 965 F. Supp. 1026. 1037 (M.D. Tenn. 1997) (citations omitted)), while the tort of battery is "an intentional act that causes an unpermitted, harmful or offensive bodily contact" (*Cary v. Arrowsmith*, 777 S.W.2d 8, 21 (Tenn. Ct. App. 1989) (citations omitted)).

Plaintiff avers that Defendants committed assault and battery upon him by: (1) "intentionally and knowingly enforcing a policy that required Plaintiff to walk in the rain, on slippery concrete with his hands behind his back, result[ing] directly in his injuries and suffering"; (2) "intentionally and knowingly enforcing a policy that required Plaintiff and other inmates to suffer 'hardship, pain and misery' while incarcerated"; and (3) "knowingly refusing to remove Plaintiff from cells wherein dangerous living conditions existed; to wit: slippery wet floors and black mold." Docket No. 6, p. 154-57.

Taking Plaintiff's allegations as true, Plaintiff has failed to demonstrate either that these

14

actions "created reasonable apprehension of imminent physical harm" or "caused an unpermitted harmful or offensive bodily contact." Accordingly, Plaintiff cannot sustain his assault and battery claim and it should be dismissed.

### c. Official Oppression

Plaintiff, in his verified Amended Complaint, asserts that Defendants committed the "tort of official oppression." Docket No. 6, p. 157.

Despite Plaintiff's assertion, there is no such tort. "Official oppression" relates to a criminal statute. *See* Tenn. Code Ann. §39-16-403. Tenn. Code Ann. §39-16-403 does not provide for a private cause of action. *See id.* Accordingly, Plaintiff's "official oppression" claims should be dismissed.

### d. Medical Malpractice

Plaintiff, in his verified Amended Complaint, asserts that Defendants committed "the tort of medical malpractice" by "failing to render proper aid and medical treatment." Docket No. 6, p. 157.

In order to sustain a claim in Tennessee under the Medical Malpractice Act, Tenn. Code Ann. § 29-26-115 - § 29-26-122. Section 121 of that Act requires that, prior to filing suit, the plaintiff must send a notice to prospective defendants. Specifically, "[a]ny person . . . asserting a potential claim for medical malpractice shall give written notice of the potential claim to each health care provider that will be named a defendant at least sixty (60) days before the filing of a complaint." Tenn. Code Ann. § 29-26-121(a)(1). Plaintiff in the case at bar failed to do so. Accordingly, he cannot sustain this claim, and Plaintiff's medical malpractice claim should be dismissed.

15

### III. Conclusion

For the reasons discussed above, the undersigned recommends that Defendants' Partial Motion to Dismiss (Docket No. 62) should be GRANTED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge